# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>15346 S SEMINOLE DRIVE, OLATHE, KANSAS | Case No. 21-mj-08086-JPO |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, ROCIO MERE, a Special Agent of the Office of Special Investigations, being duly sworn, do depose and state as follows:

1. I am employed as a Special Agent (SA) for the Office of Special Investigations (OSI) assigned to OSI 3rd Field Investigations Squadron, Cyber Investigations and Operations, Joint-Base San Antonio, TX. I have been a Special Agent with OSI since May 2010. I graduated from the Federal Law Enforcement Training Center: Criminal Investigator Training Program, and the OSI Basic Special Investigators Course at Glynco, GA in March 2010 and May 2010 respectively. My official duties include investigating major criminal violations with a nexus to the Department of Defense and the Department of the Air Force. Prior to becoming a Special Agent in OSI, I was a computer systems network engineer for General Dynamics. I hold an undergraduate degree in Information Systems from University of Maryland University College, a Masters in Information Systems (MIS) from University of Phoenix and have completed several advanced criminal, cyber and counterintelligence investigations courses. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers, agents and witnesses.

2. As a Special Agent, I am authorized to investigate violations of the laws of the United States and to execute search warrants and exercise military apprehension and civilian arrest authority. I have authority to investigate crimes involving the Department of Defense, including but not limited to crimes which involve attempted or successful unauthorized intrusion of computer network infrastructure owned, contracted by, or serving the Department of the Air Force. I have learned the following information in my official capacity, by firsthand observations, as well as by receiving information from federal and local law enforcement in reference to the investigation of GARRETT WEAVER for federal criminal violations involving Computer Fraud Crimes.

3. The information contained in this affidavit is based on my personal knowledge and information received from records, documents, persons and other physical evidence obtained during this investigation. It does not include every fact known to the government, but only those necessary to support a finding of probable cause.

4. The individual I believe to be involved in this offense is identified as: GARRETT WEAVER, 15346 S Seminole Drive, Olathe, Kansas. The ongoing investigation by OSI has developed probable cause to believe that WEAVER has committed violations of Title 18, United States Code, Sections 1030, Fraud and related activity in connection with computers and 1343, Wire Fraud.

## *PROPERTY TO BE SEARCHED*

The property to be searched is **15346 S. Seminole Drive, Olathe, Kansas,** further described as a single two-story home located in a cul-de-sac lot:



## *PROPERTY TO BE SEIZED*

All records relating to violations of 18 U.S.C. § 1030 and 1343, those violations involving **GARRETT WEAVER** and occurring after **November 1, 2020** including:

   a. Records and information relating to the mining of Bitcoin and other cryptocurrency;

   b. Records and information related to the acquisition and spending of Bitcoin and other cryptocurrency;

   c. Records and information relating to an unauthorized access of an Office of Special Investigations Computer System;

    d. Records and information showing evidence of occupancy of the PREMISES, including, but not limited to, utility bills, real estate records, insurance records, and/or keys

    e. Records and information relating to the operation of a botnet such as crypto-jacking software, scripts, and malicious code;

    f. Records and information relating to the identity or location of the suspects;

    g. Records and information relating to malicious software;

Computers or storage media used as a means to commit the violations described above, including violations of 18 U.S.C. §§ 1030, fraud and related activity in connection with computer, and 1341, wire fraud.

For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    h. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    i. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    j. evidence of the lack of such malicious software;

    k. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    l. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    m. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

    n. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

    o. evidence of the times the COMPUTER was used;

    p. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    q. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    r. records of or information about Internet Protocol addresses used by the COMPUTER;

    s. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    t. contextual information necessary to understand the evidence described in this attachment.

Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## BACKGROUND AND EVIDENCE OF VIOLATIONS AND PROBABLE CAUSE

5. On November 16, 2020, an OSI computer systems engineer was conducting maintenance on an OSI computer information system (CIS) and noted the CIS was not processing valid requests. The engineer conducted a review of processes running on the system and noted an unauthorized process was consuming the entirety of the CIS's computing resources. A review of the CIS logs documenting the CIS's activity between November 10, 2020 and November 23, 2020 disclosed an attacker's computer system with internet protocol (IP) address 136.33.189.193 attempted connection to the CIS 38 times, succeeding on the last connection attempt. The CIS log indicated the attacker's system attempted to connect using Secure Shell protocol (SSH), by using an attack known as "brute force." In a brute force attack, the attacker attempts to connect to a system by trying several password combinations to achieve a successful connection.

6. A forensic analysis of the CIS disclosed six scripts designed to run commands on a victim's Linux computer operating system, in this case the CIS. A review of the scripts disclosed the scripts could enumerate the victim system's architecture, terminate any cryptocurrency mining operations that may be taking place on a system, and execute another program from the "Outlaw" malware suite. The specific program on the CIS was a "crypto-jacker," which leverages a computer system to conduct cryptocurrency mining. Cryptocurrency mining uses a computer's resources to solve complex mathematical problems as "proof-of-work," which can then be exchanged for cryptocurrency units. Cryptocurrency mining, verification and payment transactions are maintained on an

electronic ledger, known as a blockchain. The blockchain for a specific cryptocurrency's ecosystem is shared with the entire ecosystem, such that transactions, to include payment for proof-of-work, are recorded and in theory, cannot be disputed. The cryptocurrency's value is based on the fact that only one individual can be paid for solving a specific cryptographic problem, which is documented by the blockchain. The payment is delivered as a set of private digital encryption keys, which uniquely match respective recorded public keys on the blockchain. The individual conducting the mining or transaction can then store their private keys digitally or physically to protect them. Financial transactions can conducted by exchange of private keys and their verification via public keys. Transactions can include exchanging cryptocurrency for fiat currency. Private keys can be stored in digital media known as "hardware wallets," on online cryptocurrency exchanges, or they can be documented and secured physically. Hardware wallets can range in complexity from entire computer information systems, to dedicated information storage devices, including flash drives and other portable media.

7. An open source search for the IP address 136.33.189.193 disclosed the IP address was owned by the Internet Service Provider (ISP) Google Fiber. The search disclosed the device was running a Linux-derived computer operating system known as Raspbian, which was designed to run on Raspberry Pi computer devices. The search also disclosed the IP address resolves to an approximate geographic location of Prairie Village, KS. The open source search disclosed the IP address has been reported for abuse 2,855 times by 396 distinct sources between May 31, 2020 and December 15, 2020, most commonly for brute force and SSH attacks.

8. Google provided subscriber data relating to the IP address 136.33.189.193, pursuant to a Department of Defense Inspector General subpoena. Google disclosed the IP address was registered to GARRETT WEAVER, and the service address was 15346 S Seminole Dr, Olathe, KS.

9. An open source research revealed WEAVER has experience in Information Technology (IT) and was employed at NIC Incorporated as a DevOps Engineer. NIC Incorporated provides digital solutions and services for local, state and federal governments. The open source search disclosed WEAVER holds a bachelor degree in Management Information Systems from Northwest Missouri State University.

10. A review of WEAVER's public-facing social media presence disclosed WEAVER operates a Twitter account page under the identifying handle "@grrttweaver." A review of the account disclosed several retweets (sharing of others' Twitter posts to his followers) related to cryptocurrency mining and trading.

11. A review of law enforcement databases disclosed WEAVER is associated with the address 15346 S Seminole Dr, Olathe, KS.

12. On April 27, 2021, law enforcement officers conducted surveillance on WEAVERs residence and noted a 2014 silver in color, Silverado 1500, with Kansas license plate 430HRV and a 2017 black in color, Mazda 6, with Kansas license plate 006LEJ present in the driveway of 15346 S Seminole Dr, Olathe, KS.

13. A review of law enforcement databases disclosed both vehicles (2014 Silverado 1500 and 2017 Mazda 6) were registered to WEAVER and associated with address 15346 S Seminole Dr, Olathe, KS.

**TECHNICAL TERMS**

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

   b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

   c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

15. As described, this application seeks permission to search for records that might be found on the PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

16. *Probable cause.* I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and

   virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

  d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

17. *Forensic evidence.* As further described herein, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

  b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example,

images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer to obtain unauthorized access to a victim computer over the Internet, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

18. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a

complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

   a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

   b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

   c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

19.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

20.   I submit that this affidavit supports probable cause for a warrant to search the PREMISES and seize the items described above.

ROCIO MERE, SA, DAF
Office of Special Investigations

Subscribed and sworn to before me on May 3, 2021, after having been submitted to me via reliable electronic means:

*James P. O'Hara*

JAMES P. O'HARA
CHIEF UNITED STATES MAGISTRATE JUDGE